UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-24124-BLOOM/Reid

RUDOLPH GONZALEZ,

    Petitioner,

v.

METRO WEST DETENTION CENTER *et al.*,

    Respondents.
    _____/

**ORDER**

**THIS CAUSE** is before the Court upon Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, ECF No. [8] ("Amended Petition"). Respondent filed a Response to Order to Show Cause, ECF No. [23] ("Response"), to which Petitioner filed an Answer to Response Filed March 25, 2020, ECF No. [30] ("Reply"). The Court has reviewed the Amended Petition, the Response, the Reply, the record in this case and applicable law, and is otherwise fully advised. For the reasons set forth below, the Amended Petition is denied.

    **I.**    **BACKGROUND**

This action arises from an underlying homicide incident involving Petitioner and his subsequent detention. Petitioner is currently in lawful custody at Metrowest Detention Center. *See* ECF No. [22]. According to the arrest affidavit, Appendix C,[1] ECF No. [24-1] at 65-67, on May 15, 2015, police were dispatched to a 7-Eleven store located at 533 N.W. 103rd Street, Miami, Florida due to a shooting in the store's parking lot. The affidavit states as follows:

> The victim and the Defendant are involved in a boyfriend/girlfriend relationship and also reside together. The Defendant was involved in a verbal altercation with the victim in the 7-Eleven parking lot. At the time, the victims [sic] vehicle and the

---

[1] The Appendix ("App.") refers to the items contained in ECF No. [24-1].

> Defendants [sic] vehicle were both parked in the 7-Eleven parking lot. The victim sat inside of the driver seat of her Mercedes-Benz as the Defendant walked to his BMW and armed himself with a pistol, which he obtained from his BWMs [sic] trunk. The Defendant returned to the victims [sic] vehicle, opened the drivers [sic] side door and shot the victim multiple times. The Defendant then made attempts to access his BMW but was unable because he lost his keys. MDPD uniform officers arrived on the scene shortly afterwards and placed the Defendant in custody. The Defendant provided a post Miranda statement admitting his involvement in the victims [sic] homicide. The Defendant was transported to TGK.

*Id.* On May 16, 2015, Petitioner filed his Notice of Defendant's Invocation of the Right to Counsel. *See* App. D. On June 5, 2015, the State of Florida filed an information in the Eleventh Judicial Circuit, Case No. F15-010156, charging Petitioner with two counts: (1) one count of second-degree murder with a deadly weapon, and (2) one count of shooting or throwing a deadly missile. *See* App. C. A bond hearing was held the same day, and the trial court set bond at $7,500 for count two but no bond for count one. *See* App. B; App. F.

On April 19, 2016, during a self-representation hearing,[2] Assistant Public Defender ("APD") Carl Young explained to the court that Petitioner "might be getting a private attorney" and that APD Young had been "fired" by Petitioner. *See* 4.19.2016-T at 4. Petitioner spoke directly with the court about his perception that APD Young was an ineffective attorney. *Id.* at 5-11. The court explained to Petitioner his right to legal representation, how conflicts of interest are handled, and how Petitioner's competency to assist in his own defense and go to trial were at issue. *Id.* at 9-13, 17-18. Following a series of questions with the court, Petitioner affirmatively told the court that he will "continue with Mr. Young['s representation]" in his lawsuit. *Id.* at 18-21.

On October 13, 2016, APD Young filed a motion to withdraw and certification of conflict of interest. *See* App. G. The Office of the Public Defender was thereafter discharged and the Office of Regional Counsel was appointed on October 17, 2016. *See* App. H; App. I. On November 15,

---

[2] The transcript of the April 19, 2016 hearing ("4.19.2016-T") is contained in ECF No. [25-1].

2

2016, the Regional Conflict Attorney filed a motion to withdraw and certification of conflict of interest, which was granted. *See* App. A at 28 (entries 250 and 251); App. J.

On December 9, 2016, privately retained counsel, Andrew Rier, filed his notice of appearance and notice of participation in discovery, *see* App. K, and he filed a written plea of not guilty on Petitioner's behalf, *see* App. L.[3] On April 9, 2019, Mr. Rier filed a motion for competency evaluation in which he stated that Petitioner had been diagnosed with various mental health issues, and pursuant to Fla. R. Crim. P. 3.210(b) and Fla. Stat. § 916.12(2), he requested that the court appoint experts to examine Petitioner and determine his competency. *See* App. P. Doctors Sanford Jacobson, Vanessa Archer, Ted Cunliffe, and Ralph Richardson were appointed by the court. *See* App. A at 3 (entry 629); App. Q; App. U; App. Z.

Dr. Jacobson filed an evaluation concluding that Petitioner was competent to proceed to trial. *See* App. R. Doctors Archer and Cunliffe, however, filed evaluations concluding that Petitioner was incompetent to proceed to trial. *See* App. V; App. Y. On August 26, 2019, the court held a competency hearing, but refrained from determining Petitioner's competency until it could hear from Dr. Richardson.[4] *See* 8.26.2019-T at 102-05. On September 12, 2019, Dr. Richardson filed an evaluation concluding that Petitioner was incompetent to proceed to trial. *See* App. AA. On November 12, 2019, the court held a hearing in which the parties stipulated to Dr. Richardson's report, *see* App. B, and Petitioner was determined to be incompetent to proceed to trial. *See* App. BB. Petitioner was then ordered to undergo treatment pursuant to Fla. Stat. § 916.13 and Fla. R. Crim. P. 3.212. *See* App. CC.

---

[3] Louis Casuso was also appointed as counsel for Petitioner on December 9, 2016, *see* App. M, but he filed a motion to withdraw as attorney of record on December 20, 2016 due to Mr. Rier's retention. *See* App. N. The court discharged Mr. Casuso as counsel on December 28, 2016. *See* App. O.

[4] The transcript of the August 26, 2019 hearing ("8.26.2019-T") is contained in ECF No. [25-2].

On December 13, 2019, Plaintiff filed the instant Amended Petition, ECF No. [8]. In the Amended Petition, he challenges his pretrial detention and involuntary hospitalization. *Id.* at 3. Specifically, Petitioner asserts that he should be immediately released pursuant to his "conditional release plan" because he does not meet the criteria for involuntary hospitalization under Florida law, and he requests the Court conduct an evidentiary hearing and dismiss all of the State charges against him. *See id.* at 3, 7, 17. The Amended Petition alleges six grounds that Petitioner believes support his claim that he is held in violation of his constitutional rights: Ground 1: ineffective counsel and no counsel provided by the State; Ground 2: deprivation of his right to proceed *pro se* or with proper representation; Ground 3: *Brady* violation and destruction of evidence; Ground 4: violation of right to a speedy trial; Ground 5: self-defense and lack of State rebuttal evidence; and Ground 6: he does not meet the criteria for involuntary hospitalization. *See generally* ECF No. [8].

Respondent was ordered to show cause why the Amended Petition should not be granted and was directed to file all documents and transcripts necessary to properly resolve the Amended Petition. *See* ECF Nos. [11] and [12]. On March 25, 2020, Respondent filed the Response, ECF No. [23], and supporting documents and transcripts. *See* ECF Nos. [24] and [25]. In the Response, Respondent maintains that Petitioner is not entitled to federal habeas corpus relief under 28 U.S.C. § 2241 because he has failed to exhaust his state court remedies. ECF No. [23] at 13-15. Respondent lists numerous state court mechanisms for Petitioner to challenge any perceived constitutional violations. *Id.* at 14-15. Additionally, Respondent argues that each ground raised in the Amended Petition is insufficient to grant the relief Petitioner seeks. *See id.* at 15-29.

In the Reply, Petitioner stresses that he acted in self-defense during the underlying incident, and he appears to argue that he attempted to exhaust his state court remedies to no avail. ECF No. [30] at 1-3. He asserts that he has been denied due process for five years, and that given the "extreme circumstances" of his case, federal involvement is justified. *Id.* at 4. He then reargues the

4

Case 1:19-cv-24124-BB Document 33 Entered on FLSD Docket 05/06/2020 Page 5 of 20
Case No. 19-cv-24124-BLOOM/Reid

grounds challenging his detention that he previously raised in the Amended Petition. *See id.* at 4-8.

The Amended Petition, accordingly, is ripe for consideration.

## II. LEGAL STANDARDS

Petitions for habeas corpus relief brought by a pre-trial detainee are governed by 28 U.S.C. § 2241. *Hughes v. Attorney Gen. of Fla.*, 377 F.3d 1258, 1261-62 (11th Cir. 2004); *Stacey v. Warden, Apalachee Corr. Inst.*, 854 F.2d 401, 403 n.1 (11th Cir. 1988) ("Pre-trial habeas petitions . . . are properly brought under 28 U.S.C. § 2241, which applies to persons in custody regardless of whether final judgment has been rendered."). "Since the beginning of this county's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *Younger v. Harris*, 401 U.S. 37, 43 (1971). Under *Younger*, absent "extraordinary circumstances a federal court must abstain from deciding issues implicated in an ongoing criminal proceeding in state court." *See Thompson v. Wainwright*, 714 F.2d 1495, 1503 (11th Cir. 1983). "Federal courts have consistently recognized this limitation on enjoining state criminal prosecutions unless one of a few narrow exceptions is met." *Hughes*, 377 F.3d at 1263. The exceptions to the *Younger* abstention doctrine are when: "(1) there is evidence of state proceedings motivated by bad faith, (2) irreparable injury would occur, or (3) there is no adequate alternative state form where the constitutional issues can be raised." *Id.* at 1263 n.6 (citing *Younger*, 401 U.S. at 45, 53-54).

A district court may not grant a habeas corpus petition unless a petitioner has exhausted his state court remedies. *See id.* at 1262 n.4 (explaining that § 2254(b)(1)'s exhaustion requirement applies to all habeas corpus actions). *See also Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (noting that "habeas corpus actions require a petitioner fully to exhaust state remedies, which § 1983 does not"). To satisfy the exhaustion requirement, state pre-trial detainees seeking relief under § 2241

must first present their federal claims to the courts of the state in which they are being detained. *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 491 (1973). Section 2241 petitioners must exhaust "all available state court opportunities to establish [their claims]." *Id. See also* 28 U.S.C. § 2254(c) (a petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented").

"'[T]o exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.' A petitioner also must fairly present his constitutional claim 'in each appropriate state court (including a state supreme court with powers of discretionary review)' for the claim to be exhausted." *Gaines v. Attorney Gen., Fla.*, 788 F. App'x 623, 628 (11th Cir. 2019) (internal citation omitted); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). Nonetheless, the exhaustion rule is not a jurisdictional requirement, and a federal court may deny a petitioner's petition on the merits even if he has failed to exhaust his state remedies. *See Gaines*, 788 F. App'x at 628 (citing 28 U.S.C. § 2254(b)(2)).

Through this lens, the Court analyzes the Amended Petition and the parties' respective arguments.

### III. DISCUSSION

#### A. Exhaustion

Respondent argues that "[n]othing in Petitioner's application suggests that: he has been prevented from asserting his current claims in state court; there is an absence of available state

6

corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant." See ECF No. [23] at 14. It adds that Petitioner "has several state trial court and appellate court vehicles to challenge any constitutional violation," including filing a motion to dismiss, a speedy trial demand, a petition for writ of habeas corpus, and a demand to act as his own counsel. See id. at 14-15. As such, Respondent argues that Petitioner has failed to exhaust his claims and that the Court should dismiss the Amended Petition. Id. at 15.

Petitioner alleges that he has not appealed any state action because he "wrote to all the state courts" but they not responded and he "presume[s] this is [the] correct venue for appeal." See ECF No. [8] at 3, 7. He further asserts in the Reply that he has "tried to seek relief in the state courts to no avail," and he represents that he "tried to file a writ of habeas corpus with the court and it was denied without the benefit of a hearing" and he was denied a review of his *Brady* violation when his writ was denied. ECF No. [30] at 3-4 (citing App. A at 3 (entry no. 662)). He adds that he "cannot continue banging [his] head into a brickwall." *Id.* at 4.

Upon review, the Court agrees with Respondent that Petitioner has not exhausted his state court remedies. Although the record shows that Petitioner filed a *pro se* petition for writ of habeas corpus on January 30, 2020, which was set for hearing on February 12, 2020, the writ was stricken on February 24, 2020. *See* App. A at 3 (entry nos. 655, 656, and 662). No explanation is provided on the docket for why the writ was stricken. Regardless, Petitioner does not establish that he has sought relief and appealed his claims through the state courts nor that he lacks available state court remedies. As Respondents state, Petitioner retains several trial and appellate court options to challenge constitutional violations. *See* ECF No. [23] at 14-15. Accordingly, the Amended Petition is due to be denied for failure to exhaust state court remedies. Even were that not so, the Amended Petition is otherwise insufficient on the merits.

### B.   Ground one – ineffective assistance of counsel

Petitioner argues that he was "effectively without representation for [the] first 18 months of incarceration." ECF No. [8] at 10. Specifically, he asserts that APD Young failed to do a conflicts check and was conflicted due to a prior legal representation; lied in court; deposed a key witness without speaking to him about the questions to be asked; failed to follow Petitioner's instructions to take him to court and in seeking continuances against his orders; failed to ask for an *Arthur* hearing or stand your ground hearing; and failed in his representation. *Id.* at 8, 10. He also assets that his replacement counsel did not read his case file, did not know he was claiming self-defense, and advised him to "take whatever offer the state offered" him. *Id.* at 10. In his opinion, the public defender's office's representation "clearly falls below an objective standard of reasonableness[.]" ECF No. [30] at 4. Further, he adds that his current counsel does not return calls, refuses to follow his instructions, and has caused Petitioner from being able to seek redress in state court. *See* ECF No. [30] at 4.

Where a movant challenges counsel's effectiveness, he must demonstrate that: (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland v. Washington,* 466 U.S. 668, 687-88, 694 (1984). "A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one." *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014). To show deficient performance, a movant must demonstrate that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted). With regard to the prejudice requirement, the movant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at

694. Against this backdrop, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Upon review, the Court finds Petitioner's claim to be without merit.

First, Petitioner has not shown how he has been prejudiced by the conflict caused by APD's representation. The case has yet to go to trial, he has had subsequent counsel represent him, and he still can move for dismissal of his case. Importantly, Mr. Rier filed a Written Plea of Not Guilty on December 9, 2016. *See* App. L. Second, the record shows that his counsel did request an *Arthur* hearing, and on June 5, 2015, the trial court did not set a bond for count one but set a $7,500 bond for count two. *See* App. B; App. F. And finally, Petitioner fails to identify how he has been prejudiced by any of the continuances sought in the case or by the deposition questions asked to witnesses, or how the outcome of the proceedings would have been different had his counsel performed to his satisfaction. Accordingly, Ground One is denied.

        **C.**        **Ground two – right to self-representation**

Petitioner asserts that in March 2016, after he purportedly realized that his assigned counsel was "totally incompetent," he requested other representation but was told that the court did not believe in "wasting taxpayer money on that." ECF No. [8] at 8. He states that the court rejected his request for the right to proceed *pro se* without a *Faretta* hearing and, consequently, has prejudiced his case in an "irreversible manner." *Id.* at 8, 10. Upon review, the Court disagrees.

In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court recognized that the Constitution contains a right to self-representation for criminal defendants seeking to proceed to trial without an attorney. *See id.* at 819-20, 832-33. In order to represent oneself, a defendant must "knowingly and intelligently" waive the benefits typically associated with the right to counsel. *Id.* at 835. "When an accused manages his own defense, he relinquishes, as a purely factual matter,

9

many of the traditional benefits associated with the right to counsel." *Id.* "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (citation omitted). A "trial court's obligation to conduct a '*Faretta* hearing,' at which a defendant is 'made aware of the dangers and disadvantages of self-representation[,]' is triggered by the defendant's 'clear and unequivocal assertion of a desire to represent himself.'" *Gill v. Mecusker*, 633 F.3d 1272, 1293 (11th Cir. 2011).

The record does not establish that Petitioner has been denied the right to self-representation. On April 19, 2016, the court informed Petitioner that he is "facing life in prison" and that he has "the right to have an attorney represent [him] at every stage of these proceedings" and that he can hire his own attorney, but if not, "then what the tax payers have authorized for people who cannot afford attorneys is the public defender of Miami-Dade County." 4.19.2016-T at 5. Petitioner was then directly asked if he wishes to hire his own attorney or if he wants the public defender to continue to represent him, but he did not answer that question. *See id.* The court proceeded to describe the "statutory system of indigent defense" to Petitioner, *see id.* at 9-11, and explained to him that his "understanding that [he] could discharge the public defender and have the Court appoint somebody else to represent [him] is not true." *Id.* at 11. The court then discussed the possibility that Petitioner could represent himself. *See id.* ("You are free to fire your attorney, but if you do so, you either have to represent yourself. . . . There is an entire - - if you decide to do that, we're not going to have that hearing today, but there's many questions that I have to ask you about your knowledge of various things, but you don't have to know anything and you don't have to be good at it and you don't have to win. You're allowed to represent yourself if you want. And that's something that you have to decide."). The court then presented Petitioner with three

10

representation scenarios: he hires an attorney, he uses the public defender, or he represents himself. *Id.*

The court noted that if Petitioner discharges his attorneys, "then the law says what I should do about it and I will do that and then you will represent yourself and I will do the things that are appropriate for a defendant who is representing his or her self." *Id.* at 17. Pointedly, the court then had the following exchange with Petitioner:

> COURT: The only thing that you really need to say now is, right now, is it your intention to fire your attorney and represent yourself?
>
> PETITIONER: If I were to choose that path, Your Honor, you said there was something else that we had to do that day.
>
> COURT: I don't - - I don't have the time to do it today, but I have to go through a long list of everything that's involved in representing yourself and ask you if you know about those things.
>
> PETITIONER: Okay. And I presume after that - - from that discussion, you will determine whether I am capable of defending myself?
>
> COURT: No. Not at all. Nobody is capable of defending themselves, Mr. Gonzalez, let's be honest about that. Even these attorneys, if they were charged with this, wouldn't defend themselves. Anybody that tries to defense themselves lacks the ability to do the things that they need to do even if they know everything and are perfectly competent. People who are not attorneys certainly will not have that ability. It is really to demonstrate to you that you do not have that ability. I promise you. You would not be advantaged by representing yourself from TGK.
>
> PETITIONER: Okay. And after presuming that I don't take your current advice and proceed on having this hearing or a question and answer period, at that point, is when I have to - - like - - after having your questions and answers, I determine that, you know, it's a stupid idea, then what happens to me?
>
> COURT: Then Mr. Young continues to represent you.
>
> . . .
>
> PETITIONER: If I fire him today, then he can't do anything else and then we have the hearing and then if I decide that it's a really dumb idea to fire him, he comes back?
>
> COURT: Yes. . . . We'll have the hearing - - we'll have as soon as we can so that

11

> things won't last a long time. And then because you will have a very limited, you know, physical ability to take discovery, I will set a reasonable trial date, give you the opportunity to attempt to take discovery in whatever method you can and then we will have a trial.
>
> PETITIONER: Okay. Well, I guess I don't have much of a choice, Your Honor, so I will continue with Mr. Young.

*Id.* at 18-21. Based on this transcript, contrary to Petitioner's representations, the court did not make it "crystal clear that he had decided that [Petitioner] was incompetent to act as [his] own counsel[.]" ECF No. 30] at 4.[5] Nor does the record reflect that the court stated that it did not believe "in wasting taxpayer money" as a response to Petitioner's request for alternate counsel. Instead, the court informed Petitioner of his options for legal representation, and Petitioner affirmatively stated on the record that he will continue with appointed counsel. Accordingly, Petitioner was not denied the right to proceed *pro se* or denied a *Faretta* hearing. Ground Two is, thus, denied.

### D. Ground three – *Brady* violation

Petitioner maintains that the police committed a *Brady* violation when evidence that would have "greatly help[ed]" him was "allowed to be destroyed by [the] victim's family." ECF No. [8] at 8. According to Petitioner, after he was arrested, he informed the police that he acted in self-defense because the victim had threatened him and threatened to kill his children. *Id.* at 11. He represents that the victim repeatedly abused him and was extorting him. *Id.* Petitioner states that he told the police "where in our home, mine and departed's, was evidence to support my allegation of prior bad acts by the departed and why I had taken the threats so seriously." *Id.*[6] He adds that

---

[5] Petitioner also states that he tried again in August 2019 to request the right to proceed by self-representation, *see* ECF No. [30] at 5 (citing 8.26.2019-T at 21). That citation, however, does not reflect any request by Petitioner for a *Faretta* hearing.

[6] The Amended Petition does not describe the "evidence" that Petitioner claims was destroyed other than characterizing it as bearing on prior events, threats, and abuse. The Reply, however, notes a "videotape of [Petitioner's] abuse" and the victim supposedly "having hired a contract killer to murder an individual in Brazil who she felt had hurt her mother." ECF No. [30] at 2. Petitioner further states that he told the police "in great detail" that he had "evidence of the physical

he told the police to "secure the premises until the investigators could go and recover the evidence" and a detective supposedly agreed "specifically not to let the departed's family in as they did not live there." *Id.* Petitioner states, however, that a family member discovered "the departed's family in the apartment searching it" and that the police "clearly failed to secure the premises and obviously gave the key to the departed's family." *Id.* Petitioner opines that "[c]learly the evidence in the apartment was critical" to his defense, and that the psychiatrists that found him incompetent "would sing a different tune" if he could produce the evidence he told the police to secure. *Id.* at 11-12. He adds that the "materials were clearly exculpatory on its face based on the details" he provided. *Id.* at 12. According to Petitioner, law enforcement's alleged actions were "so outrageous" that the failure to preserve evidence arises to a due process violation. *Id.* In his view, because the "exculpatory evidence is gone forever," the appropriate sanction is to dismiss the charges. *Id.* Upon consideration, the Court disagrees with Petitioner's assessment.

To establish a *Brady* violation, a defendant must show that "(1) the government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different." *Riechmann v. Fla. Dep't of Corr.*, 940 F.3d 559, 580 (11th Cir. 2019) (citation omitted). Evidence is "favorable" under *Brady* if it is exculpatory or impeaching. *United States v. Stahlman*, 934 F.3d 1199, 1229 (11th Cir. 2019). *See also Scott v. United States*, 890 F.3d 1239, 1250 (11th Cir. 2018) ("*Brady* and its progeny stand for the proposition that the prosecution's suppression of evidence favorable to the defendant 'violates due process where the evidence is material either to guilt or to punishment, irrespective

---

and sexual abuse" he suffered due to the victim. *Id.* at 5. He also states he had evidence showing that he "had no financial motive and that he was leaving" his relationship with the victim. *Id.*

13

of the good faith or bad faith of the prosecution.'") (citation omitted).

Here, Petitioner does not provide any specificity as to police action or inaction, and he simply speculates that the police "obviously" gave keys to his apartment and that evidence, if it ever existed, has been destroyed. Further, he provides only vague and conclusory allegations regarding the unidentified evidence that was in his apartment and its importance. Vague, speculative, and conclusory allegations are insufficient to support a claim for habeas relief. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001). Moreover, while he characterizes the supposed evidence as "clearly exonerating and supportive of [his] version of events," he does not provide any foundation to assume that such evidence came within the ambit of *Brady*. Additionally, he fails to demonstrate that the police acted in bad faith. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) (holding that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law"). Accordingly, Ground Three is unsupported and is denied.

### E. Ground four – speedy trial

Petitioner asserts that his right to a speedy trial has been violated because he has been detained for over four and a half years. ECF No. [8] at 7, 13. Further, he argues that the Florida speedy trial rule is unconstitutional because the state receives an additional 15 days to remedy a mistake. *Id. See also* ECF No. [30] at 6-7. Upon review, Petitioner's claim is unavailing.

First, Ground Four references only state law when discussing Petitioner's right to a speedy trial. A habeas petition grounded on issues of state law is not a basis for federal habeas relief. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("a habeas petition grounded on issues of state law provides no basis for habeas relief"). Issues arising under Florida's speedy trial rule set forth in Fla. R. Crim. P. 3.191 raise only state law speedy trial claims, not federal speedy trial

14

claims. *See Allen v. Dep't of Corr. State of Fla.*, 288 F. App'x 643, 645 (11th Cir. 2008); *Sneed v. Fla. Dep't of Corr.*, 496 F. App'x 20, at *4 (11th Cir. 2012) (explaining that to the extent petitioner "alleged a violation of Florida's speedy trial rules, that type of claim is not cognizable on federal habeas review because it only involves state procedural rules rather than errors of federal constitutional dimension"). Therefore, this claim is not cognizable.

Second, even if Petitioner had pled a federal constitutional speedy trial issue and had exhausted it, he fails to show a constitutional violation. The "right to a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances." *Dickey v. Fla.*, 398 U.S. 30, 47 (1970) (citation omitted). "[W]hile justice should be administered with dispatch, the essential ingredient is orderly expedition and not mere speed." *Id.* at 48 (citation omitted). Delays may occur and a defendant "may be disentitled to the speedy-trial safeguard in the case of a delay for which he has, or shares, responsibility," where he makes "dilatory pleadings or motions," "fails to "object when a continuance is granted from the government," or there is "delay occasioned by [a defendant's] incompetence to stand trial." *Id.*

Based on the record, Petitioner has not previously filed any demand for speedy trial in state court. *See generally* App. A and App. B. There have been twelve continuances, of which eight were requested by the defense and four of which were jointly requested. *See* App. A at entry nos. 61, 105, 142, 187, 237, 270, 313, 393, 431, 474, 514, and 590. Additionally, from October 13, 2016 until December 9, 2016, the court was in the process of withdrawing Petitioner's previous counsel and appointing his current counsel, Mr. Rier. *See* App. G; App. H; App. K. Further, between March 26, 2019 and September 12, 2019, the court ordered various professionals to examine Petitioner for competency, *see* App. A at 3 (entry no. 629); App. Q; App. S; App. U; App. W; and App. Z, and he was adjudicated incompetent to proceed on November 14, 2019. App. BB. Accordingly, in light of the continuances, changes of counsel, and finding of incompetence,

Petitioner has not demonstrated a violation of his speedy trial rights. *See, e.g.*, *Mattingly v. Sec'y, Fla. Dep't of Corr.*, No. 3:17-CV-261-J-34JBT, 2019 WL 5102816, at *4-5 (M.D. Fla. Oct. 11, 2019) (denying petitioner's claim that his speedy trial right were violated where petitioner's competency and defense continuances caused delay). Ground Four, thus, is denied.

### F. Ground five – self-defense and available evidence

Petitioner maintains that he acted in self-defense and that the State "has no witnesses or forensic evidence to contradict, rebut or refute [his] version of events under statute for stand your ground[.]" ECF No. [8] at 7. He insists that the victim was committing a "forcible felony" against him, making "immediate and imminent threats of death against" his children, and he was "very afraid of the departed due to prior bad acts." *Id.* He states that he fatally wounded the victim because he feared for his life and that of his children, and he "had reason to believe [the victim] was armed with a firearm." *Id. See also* ECF No. [30] at 7-8. He contends that the State "is welcome to schedule a [stand your ground] hearing and prove that they have the requisite evidence to detain me, but until then, and they have had 5 years to do so, [he] should not be in custody" and is entitled to habeas relief. *Id.* at 8. Upon review, the Court disagrees.

Petitioner has not shown that he has exhausted his state court remedies available or that there is an absence of available state corrective process. Additionally, his allegations concerning the evidence, its importance, and the State's supposed inability to counter his version of events is conclusory and speculative. Moreover, although Petitioner asserts that he is the only living witness to the homicide incident, he fails to establish how this fact justifies the relief he requests. Accordingly, Ground Five is denied.

### G. Ground six – involuntary hospitalization

Petitioner states that he has been deemed incompetent and he "stipulates" that he has a "mental illness." ECF No. [8] at 7, 15. He nonetheless argues that he does not meet the criteria for

involuntary hospitalization under Florida law. *Id.* Specifically, he states that the empirical evidence "clearly demonstrates" that he is capable of surviving alone and that in the last four and a half years he has not caused, attempted, or threatened harm to himself or others. *Id.* at 15. He adds that he has complied with his treatments and examinations, and he argues that he should be released pursuant to his proposed treatment plan. *See id.* at 15-16. Upon review of the record, the Court finds Petitioner's arguments unconvincing.

First, Petitioner was determined to be incompetent by the trial court in November 2019. *See* App. BB. That ruling has not been appealed through the state court system. *See Clarke v. Regier*, 881 So. 2d 656, 657 (Fla. 3d DCA 2004) ("[h]abeas corpus is the traditional remedy used to obtain a person's release from an illegal order of involuntary commitment."). As such, Plaintiff has failed to exhaust it for federal habeas purposes. Moreover, to the extent Petitioner relies on Florida statutes governing involuntary hospitalization, he is not entitled to federal habeas relief. *See Branan*, 861 F.2d at 1508 ("a habeas petition grounded on issues of state law provides no basis for habeas relief").

Second, Petitioner's claim that he does not meet the criteria for involuntary hospitalization under Florida law is unsupported. Rule 3.212(b), Fla. R. Crim. P., directs that a court "shall first consider the issue of the defendant's competence to proceed." If the court finds the defendant incompetent to proceed, it shall then "consider issues relating to treatment necessary to restore or maintain the defendant's competence to proceed." *Id.* at Rule 3.212(c). A defendant charged with a felony and who is adjudicated incompetent may be involuntarily committed. *See* Fla. Stat. § 916.13(1). Where a court finds a defendant incompetent and requires involuntary hospitalization, a "treatment facility shall admit the defendant for hospitalization and treatment and may retain and treat the defendant." Fla. R. Crim. P. 3.212(c)(5). Within six months of the date of admission, "the administrator of the facility shall file with the court a report that shall address the issues and

consider the factors set forth in rule 3.211[.]" *Id.* Moreover, if "at any time during the 6-month period or during any period of extended commitment that may be ordered pursuant to this rule, the administrator of the facility determines that the defendant no longer meets the criteria for commitment or has become competent to proceed, the administrator shall notify the court by such a report[.]" *Id.*

Here, after court-ordered experts evaluated Petitioner for his competency, the court determined that Petitioner was incompetent to proceed to trial and that he needed to be committed for treatment. *See* App. BB; App. CC. Among the court's findings, Petitioner was "manifestly incapable of surviving alone," there was as "substantial likelihood that in the near future . . . [he] will inflict serious bodily harm" on himself or another, less restrictive alternative "have been judged to be inappropriate" and no appropriate less restrictive alternative is available, and there was a "substantial probability that the mental illness causing" his incompetence "will respond to treatment[.]" *See* App. CC. Since that time, on February 21, 2020, Dr. Holly Goller filed an evaluation concluding that Petitioner has been restored to competency. *See* App. DD. That same day, attorneys for Treasure Coast Forensic Treatment Center filed a Notice of Restoration of Pre-Trial Competence. *See* App. EE. The record, however, does not reflect that since November 2019, an order finding Petitioner competent to proceed has been entered.

And finally, Petitioner's challenge to his detention pursuant to *Jackson v. Indiana*, 406 U.S. 715 (1972) is misplaced. In *Jackson*, the Supreme Court held that a "person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Id.* at 738. "If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release

the defendant." *Id.* The Supreme Court, however, determined it was inappropriate to "attempt to prescribe arbitrary time limits" for the reasonable duration of pretrial commitment. *Id.*

As noted, on November 12, 2019, Petitioner was determined to be incompetent to proceed. In the court's commitment order, it determined that "[t]here is a substantial probability that the mental illness causing the defendant's incompetence will respond to treatment and the defendant will regain competency to proceed in the reasonably foreseeable future." App. CC. Dr. Goller has since concluded recently that Petitioner has been restored to competency, *see* App. DD. Therefore, Petitioner fails to demonstrate that his competency will not be restored in the foreseeable future or that his commitment is indefinite. Ground Six, accordingly, is denied.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Amended Petition, **ECF No. [8]**, is **DENIED**;

2. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**; and

3. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 5, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Rudolph Gonzalez
5007741

Metro West Detention Center
13850 NW 41 Street
Unit 2A1
Miami, FL 33178